PERKINS (WICKS v.). See Case No. 17,615.

PERKINS, The JOHN. See Case No. 7,360.

PERKINS, The JOHN. See Case No. 10,252.

## Case No. 10,992.

### In re PERLEY.

[4 N. Y. Leg. Obs. 254.]

District Court, D. Maine. May 14, 19, 1846.

BANKRUPTCY—DISCHARGE AND CERTIFICATE—WITNESS—WILLFUL CONCEALMENT OF PROPERTY.

1. As a general rule, a creditor of a bankrupt is inadmissible as a witness to defeat his discharge. So also is an executor or legal representative of a creditor.

2. When, however, the executor stands in the position of a stakeholder, or trustee for the bankrupt, he may be a witness against him.

3. Where the testator devised to the bankrupt the notes and obligations held against him, the executor must be considered as standing in the place of the bankrupt, and he may be a witness against him, if called by the objecting creditors.

4. Where a bankrupt, prior to the passage of the bankrupt act [5 Stat. 440], causes notes to be sued in the name of a third person, and in his schedule makes no mention of the property, a court will consider such third party as trustee of the bankrupt, to the amount of his interest in the property.

5. Where a bankrupt, who was indebted to his brother in a small amount, caused certain notes to be sued in his name. some years prior to the bankrupt act, which suit was unknown to the brother till after the bankruptcy, and no mention is made of the property in the schedule, the court held that this transfer could not be regarded in the nature of a gift, and the omission to schedule the property. if fraudulently done, would be sufficient to defeat his discharge.

6. Omitting to enter on the schedule certain notes and other property proved to have been in his possession at and since the bankruptcy, if done for the purpose of willfully concealing the property, is a bar to a certificate of discharge.

[In the matter of Daniel J. Perley, a bankrupt.]

This was a case of voluntary bankruptcy. Bankrupt resides at Oldtown; a physician. His petition was filed March 3, 1843, the day of the repeal of the bankrupt act [5 Stat. 614].

Objections were filed by certain of his creditors, alleging: (1) Fraud, and willful concealment of property. (2) Preference of certain creditors. (3) Fraudulent omission to make an accurate inventory of his property, and not surrendering all his property to his assignee. (4) Admitting a fictitious debt.

Two examinations of the bankrupt had been had before F. Hobbs, Esq., commissioner, and a large number of witnesses examined on both sides. The bankrupt was shown to have been in possession of a large amount of property prior to 1837. September 9, 1837, a mortgage was executed by him to his father, Allen Perley, residing at Ipswich, Mass., of certain parcels of real estate, to secure a note for $10,000, due January 1, 1840. In 1838 the bankrupt caused two notes of $1,000 each, originally payable to himself, to be sued in the name of his brother, Joseph Perley, of Rowley, which suit came to judgment and execution in 1843. and was levied on certain real estate in Bangor, amounting to about $3,000. He was shown, also, to have notes and bonds for the conveyance of valuable property, which was in his possession at the time of his bankruptcy, and not scheduled. He had mortgaged his personal estate to his brother, Abraham Perley, April 11, 1840, as security for a note of $572, and pledged to him notes to the amount of over $800, as further security, at the same time, though the notes remained in his own possession at the time of his bankruptcy, or such as were uncollected. His father died June 24, 1843, and by his will devised to Daniel J.

Perley all notes he might hold against him at his decease. Col. Edward Todd, of Rowley, was appointed executor. In his schedule A. the bankrupt sets forth a debt to his father for about $7,000. Abraham Perley, his brother, is put down a creditor for $572. Joseph was not named as a creditor. On schedule B. the real estate mortgage September 9, 1837, was entered as subject to said mortgage to the father. The personal estate mortgaged to Abraham was also scheduled. The notes sued in Joseph's name, and the other notes and bonds above named, were omitted from the schedule.

The objecting creditors called Todd, the executor, as a witness, and after a hearing on the question, the court permitted him to testify, reserving the question of the competency of the testimony. Col. Todd testified that he witnessed and certified the acknowledgment of the mortgage deed of September 9, 1837, at Rowley, but saw no note given, or money paid. That within a day or two after the decease of Allen Perley, the father, he took possession of all his property in the presence of and assisted by the three brothers of the bankrupt. That he found the mortgage deed in three pieces, among the receipts and papers of no value, of the father's estate. That he could find no note corresponding with the mortgage, and no appraisal was made of the mortgaged property. He saw the bankrupt before the sale of his property in bankruptcy, inquired of him if any such note existed. but could not ascertain from him that any such note was given. He found among the papers of the father two notes against Daniel J. Perley, one of six hundred odd dollars, and the other for $100.

The sale of the bankrupt's property took place at Bangor, November 4, 1843. The property scheduled as mortgaged to the father was bid off by the objecting creditors. November 6, 1843, the bankrupt wrote a letter to his brother Abraham, which was produced, informing him of the sale, and telling him that the $10,000 note was in existence, and to give it to Col. Todd if he called for it. On the 13th of November, 1843, he wrote to Col. Todd, telling him of the sale, and asking him to call on Abraham for the $10,000 note. Abraham produced to the executor a $10,000 note with one endorsement across the back of it, and it was alleged on the trial, that this note was torn from the bottom of the letter to Abraham, of November 6th. A commission issued to examine the bankrupt, March 12, 1844. In January, 1844, bankrupt went to Rowley, and there endorsed and placed in the hands of the executor, 6 notes amounting to over $700, and two bonds taken to himself for the conveyance of property. These bonds were assigned to the father at that time, but the assignments dated back to a period prior to his death, and the bankrupt then declared that they were the property of the father, as additional security for the $10,000 note. In January, 1844, he got permission of the ex-

ecutor to examine the mortgage and note, and secretly took the $10,000 note, and left another corresponding in date and amount, though having different endorsements. The bankrupt's first examination was completed at Bangor, April 2, 1844. On the 12th of April, at Rowley, he got possession of the six notes and bonds, and claimed them as his property and retained them, giving a bond of indemnity to the executor. His interest in these notes and the two bonds was sold in bankruptcy February 3, 1844, under license of court granted on petition of the assignee, filed on the motion of the creditors, and bid off by the creditors. It was also proved that Joseph Perley had repeatedly stated that he had no knowledge of the suit in his name, till after the levy of execution and Daniel's bankruptcy; and that his only claim on Daniel was $428, and for this he held Abraham and the father as sureties.

A large amount of testimony was introduced on both sides, including several of the bankrupt's letters, and among other testimony, a second examination of the bankrupt, had in February, 1846. Various other points were raised, which were not noticed in the opinion of the court.

Preble & Hilliard, for bankrupt.
J. A. Poor, for creditors.

WARE, District Judge. This case has been heard on the objection of certain creditors to allowing a certificate of discharge The bankrupt has been examined, and a large volume of testimony taken on both sides. A preliminary question arose, and was discussed at the hearing, as to the admissibility of Edward Todd as a witness, who was called by the creditors and examined, subject to the objection. The objection is that he is a creditor, and excluded on the ground of interest. He is not a creditor in his own right, but only as executor of the last will of Allen Perley, the father of the bankrupt, who died June, 1843. The testator, by his will, devised to the bankrupt all the notes and other obligations he held against him. As executor of Allen Perley he is a creditor, and may prove his claim against the estate; and as a creditor he is also interested to defeat the discharge, and then he will be entitled not only to a dividend, but also his claim for the balance will be good against the bankrupt. But the will gives all these notes and obligations to the bankrupt; and therefore the executor, so far as he has an interest, has the same with the bankrupt himself. His interest, therefore, is against the party calling him, and it does not lie with the other party to make the objection, if he is willing to testify.

Several objections are made to the discharge, but that principally relied on is a fraudulent concealment of his property, in the hands in part of his father, and in part in the hands of his brother, Joseph Perley. I do not propose to go into a critical examination of the great mass of testimony in the case, but to state shortly the conclusion to which I have arrived.

I. With respect to property in the hands of Joseph Perley, his brother, it appears that he held two notes against Dwinal, and another some time before the bankrupt law was passed, and commenced a suit upon them in the name of Joseph, on which certain real estate in the city of Bangor was attached. Judgment was obtained, and the execution was levied on this property to the full value of the judgment obtained. It was not known to Joseph that any such suit was commenced, or that it was in his name, and the notes were the property of the bankrupt. Joseph, therefore, took them as trustee to the bankrupt, and would, by a court of equity, be declared to be such. He has, therefore, a right of property in the levy, which ought to have been disclosed. But it is said that he was indebted to Joseph, and that the suit was brought in his name, in order that the judgment might be appropriated to the payment of this debt, and that these proceedings thus operated as an assignment of the property to Joseph. Without relying, in answer to this, on the fact that the suit on the notes was unknown to Joseph until after the levy, it is sufficient to say, that the debt of Joseph was, at all events, less than the amount of the judgment or levy; and I think, on the evidence, less than one-quarter of the judgment. It cannot be construed as a gift to Joseph, for he had never accepted it, and it is not therefore analogous to the case. Ex parte Robinson, Law Rep. 307. And, moreover, it was never intended as a gift. It is plain enough, from the whole testimony, that the object of the bankrupt in bringing this suit in Joseph's name was to conceal his own interest in the property. Here was, then, a valuable property, which ought to have been put in the schedule of his effects; and it appears to me impossible to doubt that the concealment of his interest was intentional. It is, therefore, in my opinion, a conclusive objection to the allowance of a certificate.

And then as to the six promissory notes, amounting to about $700, and two bonds for the conveyance of real estate charged to be in the hands of his father, as collateral security for a debt due on mortgage. My opinion on the whole evidence is, that these notes were not in the hands of his father at the time when he filed his petition in bankruptcy, but in his own hands, as his own property, and ought to have been put into his schedule. I do not choose to comment on the evidence touching this part of the case, for reasons which I trust will be understood by the counsel, but merely observe, that I am fully satisfied, from the whole evidence, that it was a willful concealment of the property, and is a bar to a certificate of discharge. Costs to be charged to the estate.